## TRUDEAU *v.* BOIVIN.

1. COMPROMISE AND SETTLEMENT—PAYMENT OF RENT—EVIDENCE. The trial court did not err in refusing to decide, as a matter of law, whether rent which defendant sought to recoup had been paid by plaintiff and his deceased partner, where the evidence tended to show that defendant executed a mortgage to deceased containing a clause by which deceased was authorized to collect the rent of the premises and apply on the mortgage debt, that deceased and his partner went into possession, and that subsequently a settlement took place, whereby defendant deeded the premises to decedent for a specified consideration, greater in amount than the debt remaining due.

2. SAME—BURDEN OF PROOF—APPEAL AND ERROR.

> Although the court technically erred in charging the jury that they were to determine whether the defendant had sustained, by a fair preponderance of the evidence, that the rent was not included in the settlement, the testimony showing a compromise, tended to raise a presumption of fact that the rent was taken into consideration in the settlement, and as it was not contradicted by other evidence, the error was not prejudicial when considered with the remainder of the charge.

Error to Houghton; Streeter, J. Submitted January 16, 1911. (Docket No. 85.) Decided March 13, 1911.

Assumpsit by George Trudeau and Charles Rambaud against Anselme Boivin on an open account. Defendant claimed a set-off which was partly allowed by the verdict. Judgment for plaintiffs. Defendant brings error. Affirmed.

*P. H. O'Brien*, for appellant.

*Mason & O'Connor*, for appellees.

OSTRANDER, C. J. Upon a former trial of this cause a judgment was recovered by plaintiffs, which was reversed by this court and a new trial ordered. 158 Mich. 585 (123 N. W. 31). Upon the second trial the demand of plaintiffs, which was an unpaid balance of an account for liquors sold to defendant, was admitted, and disputed questions arose upon the claim of defendant that plaintiffs owed him $630 for rent of a building and $107 for use of certain bar fixtures. Upon the former record we said there was no evidence from which it could be legitimately inferred that the rent had been paid, and that the amount due defendant for rent and the amount due him for the use of the bar fixtures were the only questions for the jury. Upon the last trial the question whether the rent had been paid was again submitted to the jury, and it is inferred that the jury found the rent had been paid, and that the

sum due for the use of the bar fixtures had not been paid. The verdict equals the plaintiffs' demand, less the amount claimed by defendant for use of the bar fixtures. Defendant (appellant) insists that no testimony was introduced tending to prove that the rent had been paid. It is contended, further, that the court, in the charge to the jury, erroneously placed upon defendant the burden of proving that the rent had not been paid.

The testimony given upon the second trial is not the same as that given upon the first trial. The defendant's demand for rent is for a period of 21 months, from May 1, 1897, to February 1, 1899. It appears that in October, 1894, defendant and his wife gave a mortgage upon the property, the rental of which is involved, to George Trudeau for $1,952.25, containing the clause:

"And it is hereby expressly agreed by and between said parties that said second party shall have possession of the first floor of the building on said lot now used for saloon on May 1st, 1895, and rent the same and apply the proceeds of rent on this mortgage."

A note accompanied the mortgage; the debt drawing interest at 8 per cent. The note and mortgage were introduced in evidence. Upon the back of the note appeared a memorandum reading:

"Due on this Oct. 23, 1895, $2,167.71. Received on within note on the settlement on January 1st, 1897, money enough to leave this balance due on this note and mortgage from Boivin to Trudeau Jan. 1st, 1897, the sum of $1,720.78."

Under date January 27, 1899, defendant and his wife conveyed the property to the mortgagee by warranty deed, containing a covenant against incumbrances, etc., excepting a certain mortgage given by first parties to George Trudeau. The consideration stated in the deed was $1,900. George Trudeau, who was father of plaintiff Trudeau, is dead. Plaintiff Rambaud was a partner with the elder Trudeau in the saloon business from May 1, 1897, and the firm occupied the building until January

1, 1899. The present firm (the plaintiffs), it is said, succeeded to the rights and assumed the liabilities of the old firm. Rambaud testified that he paid his half of the rent to Trudeau.

Defendant testified:

"A few months after the note was executed, I owe him $1,720.78, and then the house was rented to Trudeau and Rambaud. I told him to draw that rent, and he draw that rent to the 1st of May next, and the 1st of May next he took the house himself, and he ask me how much is it for the rent? Does it go for the same rent? And I says, 'Yes,' and he go in partner with Mr. Rambaud and that's the last money I get for the house, and it's a standing money for my rent. I used to take a drink; some time I used to pay, and some time I didn't; and we never had no settlement. When we settle and I sell the house in 1900, he say, 'I allow you $1,900 for the house, and leave you the upstairs to live in, and pay the back taxes on it;' and he was to pay $1,900 for the house. I says, 'How about the rent?' and he says, 'We figure your rent and the house rent, and if you need that I help you to build again. The house rent go to your whisky bill,' and we leave it that way. It wasn't before the house burned down, it was after. * * * In January, 1897, I balanced accounts with Mr. Trudeau, and agreed that at that time I owed him $1,720.78. That $1,720.78 and the added items from then until the time I sold the building were the considerations that are named in this deed for the building. I paid the debt by deeding the building.

"Q. In the mortgage you say this:

" 'It is hereby expressly agreed by and between the parties that the said second party shall have possession of the first floor of the building on said lot now used for saloon, on May 1st, 1895, and rent the same and apply the proceeds of rent on this mortgage. * * *'

"You made that agreement in the mortgage with Mr. Trudeau, did you not?

"A. In the year 1894. On the 23d of January, 1894, I made that agreement with him. * * *

"Q. Now, Mr. Boivin, isn't it a matter of fact that you had no other agreement with Mr. Trudeau or with Mr. Rambaud as to fixtures in the saloon at any other time?

"*A*. No other agreement of what? When I sold the building to Trudeau, I didn't go and make an agreement as to the rental of the fixtures or to sell them. I did say something to them about the fixtures.

"*Q*. When?

"*A*. It was my furniture. I told him when I sold the house I had the furniture there. I never sold that. I told him I had it there, and he said, 'We will use it.' That was Trudeau. Aside from the counter, chairs, and the ice box, the other furniture in the house were. the tables and spittoons.

"*Q*. How much was all of that worth?

"*A*. I don't remember what I paid for the whole thing.

"*Q*. Never mind what you paid; how much was it worth?

"*A*. That was worth a good. deal. I don't remember what I paid for it, the counter and ice box and chairs and three tables. After deeding to Mr. Trudeau, I remained upstairs in that building for some time, and occupied it for a dwelling.

"*Q*. Paying rent for it?

"*A*. I wasn't going to pay rent and he came back and he says, 'You ought to pay rent;' and I says, 'You promised that I don't have to pay rent;' and he says, 'You are able; you ought to pay rent;' and it wasn't our agreement.

"*Q*. The rent was paid, even after Mr. Trudeau died?

"*A*. I paid rent some of the time. I .didn't have a place to move, and I couldn't throw my family on the street. I paid rent after he died. No one offered to put me out on the street, but he asked me for the rent, and I asked for a settlement. He owed me some money. He didn't care about that; he want the rent and didn't want to give me a settlement. I told him to make my settlement, and I pay the money. He turned the settlement to you to collect.

"*Q*. If he owed you money, how was it you paid him rent?

"*A*. I paid the rent. We couldn't settle; I didn't know how much he owed me and how much I owed him. It was unsettled business.

"*Q*. You paid rent after he died without being asked for it, didn't you?

"*A*. I always pay rent when he ask me, when he send the bill. No; I didn't present a bill when Mr. Trudeau's

estate was settled.   I did try to get a settlement until suit was brought here.   A dozen times I asked old man Trudeau.   A dozen times over.

"*Q.* Why didn't he settle?

"*A.* Because he didn't settle, that's all.   He talk about it and put me back and talk about it, but never come up to a settlement; and I asked George, his son, after the old man died to make up my bill and I settle, and he told me how much it was.

"*Q.* He made you up a bill, did he not?

"*A.* He never show me it.

"*Q.* Didn't he send you a copy of the bill by mail?

"*A.* He told me what it was.   He send me a bill for house rent.

"*Q.* You expected to charge the rent for the saloon building to Trudeau and Rambaud, didn't you?   *   *   *

"*A.* When I gave this deed in January, 1899, from myself and wife to George Trudeau, Sr., I didn't get any money at all.

"*Q.* Had any part of that rent from Trudeau and Rambaud been applied on your mortgage?   *   *   *

"*By the Court:* Mr. Boivin, whose handwriting is on the back of that note?

"*A.* I can't tell you.   It ain't old George Trudeau.

"*The Court:* I think you may take the answer to that question, and give Mr. Mason an exception.

"*Q.* Now, a part of that rent?

"*A.* No, sir."

No objection, based upon the fact that Trudeau, Sr., equally with the witness, had knowledge of some of the matters testified to, was interposed.   We are not informed, although the jury may have been, when Trudeau, Sr., died.   That fact may not be important.   We assume that this suit was begun early in the year 1908.   It is certified that the record contains the substance of all testimony given at the trial.   There is no testimony other than is above set out tending to prove any attempt on the part of defendant to collect his alleged demand.   In view of the agreement evidenced by the mortgage and the testimony that a settlement was made when defendant deeded the property to Trudeau, Sr., we think the court was not

in error in refusing to instruct the jury that they must consider the rent unpaid.

In the charge the court said, in part:

"All the transactions which took place between George Trudeau, Sr., and the defendant in this case, are not in evidence and could not possibly be, on account of the fact that George Trudeau is dead, and many of the dealings were entirely between these two. But you will carefully consider all the circumstances in this case, and then determine whether the defendant has sustained, by a fair preponderance of the evidence, that the rent for those premises were not included and adjusted in the settlement at the time that the building was sold and the deed finally passed to George Trudeau."

It is in this language that appellant finds the burden cast upon him to prove that the rent had not been paid. The testimony which has been referred to supports a presumption of fact that the mortgage matter was settled and adjusted with reference to the terms and conditions of the mortgage; in other words, that in the settlement which was made the money found to be due upon the mortgage debt was diminished, as the contract provided it should be, by the amount of the rent. If defendant had not testified, as in substance he did, that the debt for rent was not taken into account in the settlement, the jury would have been warranted in finding that the rent had been adjusted. Whether defendant's testimony overbalanced this presumption, was a question for the jury. Upon this record and this subject, it was the only question for the jury. We must assume that it would have been answered favorably to defendant's contention, if the jury believed the testimony of defendant. There was no other testimony tending to rebut the presumption raised by the testimony for plaintiffs. In instructing the jury to determine whether the defendant had sustained the contention that the rent was not adjusted when the building was sold and conveyed, the court was technically, but only technically, in error. In another portion of the charge the jury were told that, if they found that the rent was not

paid, that the defendant never received that rent, either in credit or cash, or any other way, then they should deduct the amount admitted to be due to plaintiffs from the amount of the rent, and give defendant a judgment for the balance. In our opinion it is clear that defendant was not prejudiced by the use by the court of the language complained about, and that reversible error is not made to appear.

The judgment is therefore affirmed.

BIRD, HOOKER, MOORE, and McALVAY, JJ., concurred.